IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | 6:24-cr-00784-JDA-1 |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| Brenda Renee Hunter, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on a pro se motion for reconsideration of an Order denying a motion for compassionate release filed by Defendant Brenda Renee Hunter ("Hunter") pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [*See* Docs. 284; 287; 289.] Hunter is serving a 26-month sentence for conspiracy to commit mortgage fraud in violation of 18 U.S.C. § 371. [Doc. 191 (sealed).] Because the applicable Sentencing Commission policy statement, *see* U.S.S.G § 1B1.13, and the 18 U.S.C. § 3553(a) factors do not support a further reduction of Hunter's sentence, the Court denies his motion.

## BACKGROUND

On January 8, 2025, Hunter pled guilty to Count 1 of the Indictment charging conspiracy to commit mortgage fraud pursuant to 18 U.S.C. § 371 (the "instant conviction"). [Docs. 2, 84.] On August 1, 2025, Williams was sentenced to 26 months' imprisonment to be followed by three years supervised release. [Doc. 249.] On February 24, 2026, Hunter filed a pro se motion for reduction in sentence. [Docs. 284.] The motion was denied by the undersigned for lack of jurisdiction because an appeal was docketed and pending that addressed the same issues raised in her motion. [Doc. 287.] However,

the Court noted that, to the extent Hunter was seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1), the motion was denied for failure to exhaust administrative remedies. [*Id*.] On March 6, 2026, Hunter filed a motion for reconsideration of the Order denying her motion for sentence reduction and seeking compassionate release. [Doc. 289.] The government opposes the motion. [Doc. 301.] The matter is now ripe for consideration.

## LEGAL STANDARD

The United States Court of Appeals for the Fourth Circuit has held that a court "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); *see United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception to this rule is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Title 18, United States Code, Section 3582(c)(1)(A)(i), commonly known as the "compassionate release" provision, provides a statutory vehicle to modify a defendant's sentence. *United States v. Wiggins*, No. ELH-13-512, 2020 WL 4436373, at *2 (D. Md. Aug 3, 2020). Section 3582 was adopted as part of the Sentencing Reform Act of 1984. *Id*. The statute originally permitted a court to alter a sentence only at the BOP's request. *See United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020), *abrogated on other grounds by Rutherford v. United States*, 146 S. Ct. 1320 (2026).

In December 2018, Congress significantly modified the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391,

2

132 Stat. 5194 (2018).  This Court has held that, as amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a sentence of imprisonment

> upon motion of the Director of BOP, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever occurs first.

*Wiggins*, 2020 WL 4436373, at *2 (cleaned up).  And so, once a defendant has exhausted his or her administrative remedies, the defendant may petition this Court directly for compassionate release.  *Id*.

Under Section 3582(c)(1)(A), the court may modify a defendant's sentence if, "after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable," it finds that:

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ....

*Wiggins*, 2020 WL 4436373, at *3. And so, to be entitled to relief under Section 3582(c)(1)(A)(i), the defendant must show that: (1) "extraordinary and compelling reasons warrant a reduction of his sentence"; (2) "the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction"; and (3) "the sentence modification is consistent with the policy

3

statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13." *Id*. (internal quotation marks omitted). The United States Sentencing Commission ("the Commission") is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t).

## DISCUSSION

**Exhaustion of Remedies**

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); 18 U.S.C. § 3582(c)(1)(A).

Hunter submitted a request for a sentence reduction to the Warden of Carswell FMC, and her request was denied. [Doc. 289-1 at 1.] The Government does not challenge that Hunter has met the exhaustion requirement. [Doc. 301 at 6.] Thus, the Court finds it has authority to consider Hunter's motion[1]. *See* 18 U.S.C. § 3582(c) (1)(A) (allowing

---

[1] It is a "well-established principle that an appeal divests a trial court of jurisdiction over 'those aspects of the case involved in the appeal.'" *Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 890 (4th Cir. 1999) (internal quotation omitted). However, the trial court may also consider collateral issues that "aid in the appeal." *Id*.; *see* Fed. R. Crim. P. 37, 2012 Advisory Committee Notes. That is, the court may consider the motion on its merits (that is, entertain it) and deny it. *See United States v. Jackson*, 468 F. Supp. 3d 59, 64-65 (D.D.C. 2020) (applying rule in addressing motion for compassionate release). The matter of compassionate release is not an issue involved in Hunter's pending appeal of her sentence. Accordingly, consistent with Federal Rule of Criminal Procedure 37(a), the undersigned finds that it retains jurisdiction to resolve Hunter's motion seeking compassionate release.

for the filing of a motion with the court when administrative options are exhausted or 30 days pass, "whichever is earlier").

**Whether There is an Extraordinary and Compelling Reason for Reduction**

With respect to the November 1, 2023, amendments to the Sentencing Guidelines, the Commission included a policy statement addressing motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. *See United States Sentencing Guidelines Manual* Supp. App. C, amend. 814 (2023). The revised policy statement for U.S.S.G. § 1B1.13(b) provides that an "extraordinary and compelling" reason warranting compassionate release can exist under any of the following circumstances, each of which includes detailed requirements and caveats:

> (1) Medical Circumstances of the Defendant
>
> (2) Age of the Defendant
>
> (3) Family Circumstances of the Defendant
>
> (4) Victim of Abuse
>
> (5) Other reasons
>
> (6) Unusually Long Sentence

U.S.G.G. § 1B1.13(b).

Section 1B1.13(b)(1) of the recently revised Policy Statement identifies four circumstances under which a defendant's medical condition may provide an extraordinary and compelling reason for relief. *See* U.S.S.G. § 1B1.13(b)(1)(A)–(D). First, under § 1B1.13(b)(1)(A), "a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis

5

(ALS), end-stage organ disease, and advanced dementia," may provide an extraordinary and compelling reason for relief. Second, under § 1B1.13(b)(1)(B), an extraordinary or compelling reason may exist if the defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of ... aging," and such condition or impairment "substantially diminishes" the defendant's ability to care for himself. Third, under § 1B1.13(b)(1)(C), an extraordinary or compelling reason may exist if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

Finally, under § 1B1.13(b)(1)(D), relief may be warranted if:

    (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

    (iii)    such risk cannot be adequately mitigated in a timely manner.

It is Hunter's burden to establish that her medical conditions create an extraordinary and compelling reason for compassionate release. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *see, e.g., United States v. Tucker*, No. 3:09-

6

502-JFA, 2021 WL 3886416, at *3 (D.S.C. Aug. 31, 2021).  Upon review, the Court finds that Hunter has failed to carry her burden.

**The Court finds no Extraordinary and Compelling Reason for Reduction**

Hunter alleges she suffered a major stroke prior to sentencing that permanently altered her health and that her current condition is critical.  [Doc. 289 at 2.]  Hunter claims she suffers from arterial blockage and that, without specialized intervention from a vascular surgeon, she remains at high risk for a recurrent and potentially fatal stroke.  [*Id*.] Hunter also claims to suffer from uncontrolled hypertension and severe hyperlipidemia which put her  at risk of cardiac arrest and another stroke. [*Id*. at 2–3.] She further claims that, although she was designated to a medical facility, the standard of care she has received is insufficient for a stroke patient; she is not receiving physical therapy, occupational or speech therapy; and she's been informed she cannot receive these services without a referral from her primary care physician who cannot see her for another six months.  [*Id*. at 3.]

Hunter also asks the undersigned to consider her responsibilities as a caregiver for her elderly father and aunt, and her son who struggles with mental illness.  [*Id*. at 4.] The Government argues that Hunter's motion should be denied because her notice of appeal to the Fourth Circuit Court of Appeals has removed jurisdiction of the matter from this Court.  [Doc. 301 at 4.]  Should the Court reach the merits, however, the Government contends the motion should be denied because Hunter has not met her burden of establishing a sentence reduction is warranted.

The Government argues that there are four medical circumstances that can create extraordinary and compelling reasons:

7

- First, extraordinary and compelling reasons exists if the prisoner is suffering from a "terminal illness." See § 1B1.13(b)(1)(A). Additionally, Hunter must show that there is "an end-of-life trajectory." § 3582(d)(2).

- Second, under U.S.S.G § 1B1.13(b)(1)(B), Hunter must show that she is suffering from a condition recognized in (b)(1)(B)(i)–(iii); that she is unable "to provide self-care within the environment of a correctional facility"; and that, she is suffering from a condition "from which he or she is not expected to recover."

- Third, under U.S.S.G. § 1B1.13(b)(1)(C), Hunter must show she is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

- Fourth, under U.S.S.G. § 1B1.13(b)(1)(D), Hunter must show that she is "housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by appropriate federal, state, or local authority."

[Doc. 301 at 6–7.]  The Government contends, Hunter meets none of these criteria for showing extraordinary and compelling reasons for a sentence reduction.  To the contrary, the Government contends Hunter is not suffering from a terminal illness, that her ability to perform self-care is not "substantially diminished", and there is no evidence that her activities of daily living have been affected.  [*Id*. at 7–8.]

The Government also contends that to meet her burden under § 1B1.13(b)(1)(C), Hunter must show that she "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." While the term "specialized medical care" is left undefined in the amended policy statement, courts construing this subsection look to whether "the BOP has provided [a] defendant with consistent medical care by (1) working to find available prescription medications that meet [a] defendant's needs; (2) issuing specialist referrals; (3) continually consulting with [a] defendant during medical visits regarding his health issues while awaiting referral processing; and (4) scheduling

8

specialist appointments." *United States v. Adjaj*, No. 3:22-CR-00240-AN-1, 2024 WL 358167, at *5 (D. Or. Jan. 30, 2024).

The Court has reviewed Hunter's medical records provided by the Government [Doc. 302-1 (sealed)] and by Hunter [Doc. 309-1] and finds no evidence of a condition that would rise to the level of an extraordinary and compelling reason for immediate release.

Hunter's medical records establish that she is being provided with specialized medical care. The BOP's awareness and treatment of Hunter's medical conditions is well documented in her medical records. [*See*, *e.g.*, Doc. 302-1 at 33, 35 40, 42, 85 (on December 11, 2025 , January 7, 2026,  and January 28, 2026, where physicians note Hunter is non-insulin dependent; showing no affected speech, mobility memory or paralysis; normal psychomotor activity, goal-directed thought process, normal behavior and is alert and oriented); *see also id*. at 73 (Hunter was diagnosed with hyperlipidemia unspecified and cerebrovascular disease unspecified but is being treated for the same)] Additionally, treatment notes from January 7, 2026, indicate a review of her cardiovascular system (arteries and veins) and her pulmonary or respiratory system was within normal limits. [*Id*. at 47.]  A review of her musculoskeletal and neurological or autonomic systems was also within normal limits with no syncope or history of seizures. [*Id*. at 48.] Because the BOP is treating Hunter's medical conditions and actively providing Hunter with the specialized care she needs, she is unable to meet her burden under § 1B1.13(b)(1)(C).  *See United States v. Boulder*, No. 3:15-CR- 30032-RAL, 2024 WL 165287, at *5 (D.S.D. Jan. 16, 2024) (denying a defendant's motion for compassionate

9

relief where, as here, her medical records reflect she "is receiving frequent and thorough medical attention"), *aff'd*, No. 24-1162, 2024 WL 3561559 (8th Cir. Jan. 31, 2024).

Additionally, Hunter does not assert, nor is there any evidence to suggest, that she is suffering from a terminal illness, *see id*. § 1B1.13(b)(1)(A), or that her ability to care for herself is "substantially diminishe[d]" by a "serious physical or medical condition," "serious functional or cognitive impairment," or her age, *id*. § 1B1.13(b)(1)(B). And there is no basis on which to conclude that Hunter "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id*. § 1B1.13(b)(1)(C). Thus, the Court finds that Hunter has failed to meet her burden.

**Hunter's Primary Caretaker Argument Fails**

Hunter argues for release because she is allegedly the "primary support for [her] elderly father" and her "aging Aunt Paulette," as well as her son, who allegedly suffers from mental illness. [Doc. 289 at 4.] The Government contends Hunter does not appear to meet the specific criteria detailed in U.S.S.G. § 1B.13(b)(3)(A), (C), and/or (D). [Doc. 301 at 9.]

Regarding the care of her son, Hunter does not allege that he is incapable of self-care because of a mental of physical disability or condition. See U.S.S.G. § 1B.13(b)(3)(A). With respect to her father, § 1B1.13(b)(3)(C) provides that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may constitute an extraordinary and compelling reason for a sentence reduction. While the Court empathizes with Hunter's desire to care for her father, the Court finds Hunter has failed to show that she is the only available caregiver

for him.  To the contrary, in her release plan, Hunter identifies Jasmine Hunter (daughter) and Pamela Little (sister) as individuals who would be available to care for her upon release.  [Doc. 302-1 at 10 (sealed).]  *See United States v. Simmons*, No. 1:14-cr-20628, 2025 WL 1189988, at *6 (E.D. Mich. Apr. 24, 2025) (denying compassionate release, noting that "at least two other family members are literally 'available' and recognizing that while 'their care may not be the most feasible,' '[t]he availability, not the feasibility, of that care ... is what this Court considers most important in assessing' extraordinary and compelling reasons for compassionate release") (quoting *United States v. Hanner*, No. 1:07-cr-10028-01, 2023 WL 159009, at *4 (W.D. La. Jan. 11, 2023)).  There is no explanation regarding whether her daughter or sister could not provide care for her father or son.  Additionally, with respect to her aunt, she is not an "immediately family member" as defined in U.S.S.G. § 1B1.13(b)(3)(D).

In seeking compassionate release, Hunter "bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction*." United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).  And while her father and son may benefit from her presence, the current circumstances and availability of other potential caregivers does not render her family circumstances extraordinary and compelling.  *See United States v. Ingram*, 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents.  Such circumstance is not extraordinary.").  For these reasons, the Court finds that Hunter has failed to show extraordinary and compelling reasons due to her family circumstances.

**The Section 3553(a) Factors Weigh Against Reduction**

Even if the Court found compelling reasons to reduce Hunter's sentence, the Section 3553(a) factors weigh against reduction.[2]

As an initial matter, the Court finds that the "nature and circumstances of the offense" weighs against reducing Hunter's sentence.  According to Hunter's Pre-Sentence Report ("PSR") [Doc. 191 (court only)], Ms. Hunter pled guilty to conspiracy to commit mortgage fraud.  In summary, as a mortgage loan consultant with Touching Lives Consulting Team, LLC, Hunter engaged in a mortgage origination scheme.  Hunter's role was to coach borrowers and to falsify W-2, payroll, and employment information to qualify borrowers for mortgage loans for which they might not have otherwise qualified.  Hunter colluded with others to provide false Verifications of Rent and false Verification of Employment to substantiate the false representations.

Hunter had two prior federal convictions: the first for fraudulently obtaining a loan by use of a false Social Security number ("First Federal Conviction") and a second for obtaining a loan using a false Social Security number ("Second Federal Conviction").  For the First Federal Conviction, Hunter received five years of probation.  That probation was subsequently revoked two and a half years later, and Hunter was sentenced to six months to run consecutive to her sentence on the Second Federal Conviction.  For the Second Federal Conviction, Hunter was sentenced to 37 months to run concurrently with her supervised release revocation term.

---

[2] Hunter failed to address the § 3553(a) factors other than to mention them in passing in her reply.  [*See* Doc. 309 at 3.]

12

In addition to her federal convictions for fraudulent schemes like the instant conviction, between 1995 and 2016, Hunter had numerous convictions for worthless or fraudulent checks, property crimes, and obtaining property by false pretense, some of which required her to serve prison time. Hunter has had several opportunities to show that she has been rehabilitated from her life as a fraudster. She does not appear to have been dissuaded from her criminal tendencies by incarceration, as is evident from her criminal history.

Similarly, the Court finds Hunter's history and characteristics weigh against a sentence reduction. Hunter's criminal history and incarcerative sentences should have deterred her from criminal conduct. Hunter was assigned a criminal history category VI at sentencing—the highest category in the federal system. [PSR ¶ 153.] None of these sentences were sufficient to deter Hunter from further criminal conduct.

Hunter has served approximately six and a half months of her 26-month sentence, or approximately 25% of her sentence. [Docs. 301-3 at 4 (sealed).] Thus, the Court finds that the factors considering the promotion of respect for the law and just punishment weigh against reducing Hunter's sentence. *See United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (noting that compassionate release is generally granted only "for defendants who ha[ve] already served the lion's share of their sentences").

Hunter provided no evidence of participation in rehabilitation efforts while incarcerated. Even if she had, the Court could not overlook the severity of Hunter's consistent engagement in fraudulent criminal activities and her complete disregard for the laws. *See United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022).

13

**CONCLUSION**

For the reasons stated above, the Court finds Hunter has failed to show extraordinary and compelling reasons supporting a reduction in sentence.  Based on the foregoing, and considering the relevant § 3553(a) factors, the Court finds that even if the threshold requirements of compassionate release were met—and the Court finds they were not—the Court would not grant Hunter's motion for compassionate release based on the present record before the Court.  Thus, it is hereby ORDERED that Hunter's pro se motion for a reduction in her sentence [Doc. 289] is DENIED.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

June 30, 2026
Greenville, South Carolina

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.